**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**CARRIE AUSTIN**                                                                           **PLAINTIFF**

**v.**                              **Case No. 3:18-cv-00195-JTK**

**ANDREW SAUL, Commissioner,
SOCIAL SECURITY ADMINISTRATION**                        **DEFENDANT**

MEMORANDUM AND ORDER

Plaintiff Carrie Austin appeals the final unfavorable decision of the Commissioner of the Social Security Administration (SSA) denying her claim for disability insurance benefits (DIB), based on disability.[1]  Both parties have submitted appeal briefs, and the case is now ready for decision.[2] The only issue before the Court is whether the Commissioner's decision is supported by substantial evidence. After reviewing the administrative record and the argument of the parties, the Court finds the Commissioner's decision is supported by substantial evidence.

**I.     Background**

Carrie Austin protectively filed for benefits on or about November 16, 2015, alleging a disability onset date of November 21, 2010.  (Tr. 213-215) The onset date was amended

---

[1] "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

[2] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docket Entry No. 4)

to July 25, 2014, following a prior unfavorable decision dated July 24, 2014. (Tr. 228) She claims disability due to fibromyalgia, Sjorgen's Syndrome, osteoarthritis, depression, anxiety/panic attacks, degenerative disc disease, temporomandibular joint disorder (TMJ), migraines, and irritable bowel syndrome (IBS). (Tr. 232) The claim was denied initially and upon reconsideration. A hearing was held on July 12, 2017, before an Administrative Law Judge (ALJ).[3] The ALJ issued an unfavorable decision, denying Plaintiff's claim on February 16, 2018. (Tr. 12-24) The Appeals Council subsequently denied the request for review. (Tr. 1-3) It is from this decision that Plaintiff now brings her appeal.

## II.     Administrative Proceedings

Plaintiff was thirty-nine (39) years old at the time of the administrative hearing and had past relevant work as a CNA and hand packer. (Tr. 75) The ALJ applied the five-step sequential evaluation process[4] to Plaintiff's claim. Plaintiff satisfied the first step because she had not engaged in substantial gainful activity since her amended alleged onset date of July 25, 2014. (Tr. 17) At step two, the ALJ found Plaintiff's medically determinable

---

[3]The Honorable David L. Knowles.

[4]The five part test asks whether the claimant: (1) is currently employed; (2) severely impaired; (3) has an impairment or combination of impairments that meet or approximate a listed impairment; (4) can perform past relevant work; and if not, (5) can perform any other kind of work. Through step four of this analysis, the claimant has the burden of showing that he is disabled. Only after the analysis reaches step five does the burden shift to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Steed v. Astrue*, 524 F.3d 872, 875 n. 3 (8th Cir. 2008).

impairments[5] to include degenerative disc disease, degenerative joint disease, Sjorgen's Syndrome, and obesity, but at step three, he found none of these impairments met or medically equaled a listing. (Tr. 17-18) Before proceeding to step four, the ALJ determined Plaintiff had the residual functional capacity[6] (RFC) to perform sedentary work,[7] with the following restrictions: (1) stand and/or walk two hours in an eight-hour workday; (2) sit six hours in an eight-hour workday; (3) push and/or pull 10 pounds occasionally and less than 10 pounds frequently; and (4) avoid exposure to hazards, such as moving mechanical parts, equipment such as tools and machinery, electrical shocks, unprotected heights, and operating a motor vehicle. (Tr. 19) The ALJ found Plaintiff able to appropriately respond to minor changes in normal work routine. (*Id.*) He further determined Plaintiff retained the mental ability to understand, remember, and carry out simple job instructions; make judgments in simple work-related situations; and respond appropriately to coworkers and supervisors but should avoid interaction with the general public. (*Id.*) At step four, the ALJ concluded

---

[5]A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[6]"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (Social Security Administration, July 2, 1996).

[7]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Plaintiff was unable to perform any past relevant work. (Tr. 22) Relying on the testimony of a vocational expert (VE), the ALJ found other work existing in the national economy that Plaintiff could perform, such as document preparer, table worker, and PC board assembler. (Tr. 23) Accordingly, the ALJ found Petitioner was not disabled. (Tr. 24)

### III.     Plaintiff's Allegations

The issue before the Court is whether substantial evidence supports the ALJ's decision finding Plaintiff not disabled. (Plaintiff's Brief, Doc. No. 12, p. 2) Specifically, Plaintiff contends the ALJ (1) failed to identify her lupus and fibromyalgia as severe impairments at step two of the sequential analysis, and (2) failed to comply with 20 C.F.R. § 404.1527 by according adequate weight to her treating physician's opinion. (*Id.* at 3-8)

### IV.     Discussion

#### A.     Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000); 42 U.S.C. § 405(g). "Substantial evidence" in this context is less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted) The Court does not "reweigh the evidence presented to the ALJ," *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after

reviewing the evidence, the Court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence exists for the opposite decision. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

**B.    Arguments on Appeal**

    1.    <u>Step Two</u>

Plaintiff argues first the ALJ erred at step two in failing to identify her lupus and fibromyalgia as severe impairments. Austin's insurance expired on December 31, 2015; therefore she had to establish lupus and fibromyalgia as disabling prior to the expiration of her insurance to be entitled to disability insurance benefits. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). Thus, the relevant time period here is from Plaintiff's amended alleged disability onset date of July 25, 2014, until December 31, 2015, the date last insured. *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009). Having reviewed the record, the Court finds no error.

At step two, the SSA considers "the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 1520(a)(4)(ii). An impairment must meet a twelve-month duration requirement to be considered severe. *See* 20 C.F.R. § 404.1509. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the burden of establishing that a given impairment is severe. *Id.* at 707-08 (citing *Mittlestedt v. Apfel*, 204 F.3d 387, 358 (8th Cir. 2000)).

Plaintiff testified at the administrative hearing that she was diagnosed with lupus in 2014. (Tr. 50) The ALJ noted at the time, however, that most of the record evidence regarding Plaintiff's lupus were dated after her insurance expired. (Tr. 50-55) Plaintiff argues the ALJ provided a mere perfunctory analysis of her lupus impairment; however, the transcript refutes that suggestion. The ALJ spent an extensive amount of time trying to parcel out and establish the records that supported Plaintiff's lupus diagnosis during the relevant time period. The fact of the matter is that Plaintiff simply failed to meet her burden. The two medical records Plaintiff highlights to support her lupus severity, November 6, 2014 (Tr. 499), and March 24, 2015 (Tr. 505), do not mention lupus at all.[8] The other records Plaintiff suggest are outside of the relevant disability period at issue, and therefore, do not

---

[8]These records mention sicca syndrome, also known as Sjogren's syndrome. Sjogren's syndrome is a disorder of the immune system identified by its two most common symptoms — dry eyes and dry mouth. The condition often accompanies other immune system disorders, such as rheumatoid arthritis and lupus.
https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216 (date last visited 1/23/20).

support her claim. An impairment must be established by more than a mere diagnosis. *See Buckner v. Astrue*, 646 F.3d 549, 556-57 (8th Cir. 2011).

As with her fibromyalgia diagnosis, Plaintiff argues the ALJ's decision does not mention the condition "even once." (Plaintiff's Brief, Doc. No. 12, p. 5) There exists a split of authority in our circuit on whether an error at step two requires automatic reversal or is just mere harmless error if the claimant makes a threshold showing of any severe impairment. *See Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007); *Lund v. Colvin*, 2014 WL 1153508 (D. Minn. Mar. 21, 2014). Many have concluded an ALJ's failure to find an impairment severe at step two harmless where the ALJ otherwise finds other severe impairments exist and address any functional limitations cause by the overlooked impairment when determining RFC. *See Misty v. Berryhill*, 2019 WL 1318355 (D. Minn. Mar. 22, 2019); *Gavins v. Astrue*, 2012 WL 1060123 (E.D. Mo. Mar. 29, 2012).

Even if the ALJ erred in failing to evaluate the severity of an impairment at step two, the determination of the claimant's RFC nevertheless requires the ALJ to factor in any functional limitations attributable to the overlooked impairments. *See Misty v. Berryhill*, 2019 WL 1318355, at *4. Here, the Court referenced and cited to, throughout his opinion, the medical records indicating fibromyalgia, and whether severe or not, the ALJ clearly included the functional limitations attributed to fibromyalgia in formulating the RFC.

In conclusion, the Court finds no error at step two.

2. <u>Medical Source Statement of Sumner R. Cullom, M.D.</u>

Plaintiff's second argument is that the ALJ's decision failed to comply with 20 C.F.R.

§ 404.1527, by failing to accord adequate weight to the opinion to her treating physician. (Plaintiff's Brief, Doc. No. 12, p. 6) According to Plaintiff, the ALJ gave Dr. Collum's medical source statement little weight.  Plaintiff argues the opinion, while drafted after date of last insured,"is based off of Dr. Collom's years of medical services provided to Mrs. Austin." (*Id.*) Plaintiff also claims the ALJ failed to acknowledge or even mention Dr. Collum's migraine headache form that indicated she would have at least one migraine a week, causing interference with the ability to work at least one day a week, if not more. (*Id.* at p. 8)

An ALJ will give a treating physician's opinion controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence. *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013); *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007); 20 C.F.R. § 404.1527(c)(2).[9] "[A]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (internal quotation marks

---

[9] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency.  20 C.F.R. § 404.1520c.  Plaintiff filed her claim in 2015, so the previous regulations apply.

and citation omitted). The ALJ is free to reject the opinion of any physician when it is unsupported in the physician's own treatment notes or other evidence of record. *Myers*, 721 F.3d at 525; *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel*, 201 F.3d at 1013. Once the ALJ has decided the weight of a medical opinion, the Court's role is limited to review only whether such determination is supported by substantial evidence, not to decide whether the claimant's view of the evidence is supported by substantial evidence. *See Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

With regard to the migraine headache form, the Court finds no error. An ALJ is not required to discuss every piece of evidence that was submitted, and an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). In discussing the medical evidence, the ALJ noted that he considered all of the evidence. (Tr. 16) Further, Dr. Cullom's form (Tr. 523) was a checklist-type form unsupported by the record. *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements."); *see also Wildman v. Astrue*, 596 F.3d at 967 (holding it was proper to discount a medical opinion consisting of three checklist forms that cited no medical evidence and provided little to no elaboration); *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (giving little

weight to a medical opinion consisting of checked boxes, circled answers, and brief fill-in-the-blank responses without medical evidence and providing little to no elaboration).

In giving Dr. Collum's opinion little weight, the ALJ noted the opinion was offered well after the date of last insured, was "generally inconsistent with the degree of functioning found during the relevant period, including his own notes," and "generally inconsistent with findings of normal gait, no tenderness, normal range of motion to the lumbar spine, normal deep tendon reflexes, no joint deformity, swelling, or erythema to the hands, and normal eye examination."  (Tr. 21)  For the time period at issue—–July 25, 2014 until December 31, 2015—–the record evidence supports the ALJ's determination.  There are few records from Dr. Collum during this time period.  On December 15, 2015, Plaintiff presented to Dr. Collum with complaints of back pain and depression.  (Tr. 1113) She denied joint pain, joint swelling, and muscle pain.  (Tr. 1114) Dr. Collum noted no gross deformities in any of Plaintiff's extremities.  (Tr. 1115) Records from other physicians during this relevant time likewise support the ALJ's determination.  Charles Arkin, M.D. in November 2014 noted no swelling of the extremities, normal gait, moderately reduced range of motion of the lumbar spine, (Tr. 499-504) and in March 2015, he found the same (Tr. 505-510). On December 9, 2015, Gary M. Wilson, APRN, cosigned by Walter M. Short, M.D., indicated Plaintiff presented with a normal mood and effect; no tingling or numbness, headache; and no gross deformities, back tenderness, or extremity limitations. (Tr. 518-521) On December 29, 2015, right before the last insured date, Dr. Collum noted no headaches, no neurological limitation, no joint pain, joint swelling, muscle pain, or muscle cramps, and no musculoskeletal

limitations. (Tr. 525-527) The ALJ made no legal error considering the medical evidence. Instead, the ALJ gave less weight to an opinion that was unsupported by medically acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence.

## Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record that contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record and concludes there is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

THEREFORE, the Court hereby affirms the Commissioner's final determination and dismisses Plaintiff's Complaint with prejudice.

SO ORDERED THIS 24th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE